UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY KREITNER,

      Plaintiff,

v.                                         Case No. 8:22-cv-553-SPF

UNITED STATES OF AMERICA,

      Defendant.
_____/

## ORDER

On November 10, 2019, Plaintiff Mary Kreitner was in a two-car accident. The other driver, a United States Coast Guard ("USCG") employee driving a government-owned vehicle, crashed into the side of Plaintiff's car, totaling it. After exhausting her administrative remedies with the Department of Homeland Security ("DHS"), Plaintiff sued the United States for one count of negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* (Doc. 1). At this juncture, the United States moves for summary judgment, contending Plaintiff did not disclose expert causation testimony during discovery, which is required because Plaintiff's injuries are not readily observable (Doc. 57). Alternatively, the United States asks the Court for partial summary judgment limiting Plaintiff's recovery to $24,155.63, the amount on the most recent SF-95 Plaintiff submitted to DHS. The United States also argues Plaintiff cannot recover noneconomic damages because the permanence of her injuries is unsupported by an expert's opinion. Plaintiff opposes summary judgment (Doc. 58) and asks the Court (for the third time) to allow her to disclose experts under Rule 26(a)(2) after the deadline to do so set by the Court in the Case Management and Scheduling Order (*see* Docs. 20, 29).

Because Plaintiff offers no expert evidence to prove that the crash caused her medical injuries, she cannot prove negligence. The Court grants summary judgment for the United States.

## I.     Factual Background

Plaintiff left her Hudson, Florida apartment on November 10, 2019, planning to drive to the beach with her friend Joanna Causey ("Causey") (Doc. 57-15 at 44:18-20, 45:6-18). As Plaintiff headed south on US-19 in the far-left lane, non-party Weber, driving a DHS-owned vehicle and acting within the scope of his employment with the USCG, attempted a U-turn from the opposite direction and crashed into the driver's side quarter panel of Plaintiff's car (*Id*. at 43:10-14, 47:16-20; Doc. 57-6 at 2). In Plaintiff's words: "So we were driving down 19, and in my rear-view mirror I saw a white image getting closer and closer to us. So I looked to Joanna to say something to her and that's when we got impacted." (Doc. 57-16 at 47:10-13). Plaintiff's leased Ford sedan was totaled (*Id*. at 38:19-20, 39:17-19). She alleges she injured her neck and left shoulder in the accident and now experiences regular headaches and anxiety (*Id*. at 62:15-22, 63:1-6).

Until police arrived at the accident scene, Plaintiff "[s]at in the car. The bystander came by to check on us, and that's all I saw of him. And then once the police officer showed up, we got out of the car, gave our report." (*Id*. at 56:5-8). Plaintiff's car was towed from the scene and eventually totaled (*Id*. at 56:24-25). Plaintiff's boyfriend Jonathan Mitchell ("Mitchell") arrived to take Plaintiff and Causey home (*Id*. at 10:20-23, 59:2-3). No one called an ambulance to the scene because "[w]e didn't need one. We told them we didn't need one. . . . we didn't feel we were injured badly enough to go to the hospital at the time." (*Id*. at 58:18-19, 59:8-9).

2

Once home, Plaintiff and Causey "both started feeling a little sore and both had headaches, so we thought we should go and get checked out." (*Id*. at 59:13-15). Plaintiff had no cuts, abrasions, or bruises from the accident but experienced pain in her left arm and shoulder (*Id*. at 64:6-9). Mitchell drove Plaintiff and Causey to the ER the same day as the accident. ER doctors ran tests on Plaintiff and took x-rays but did not offer a diagnosis or prescribe medication (*Id*. at 59:1, 60:1-3, 82:8-13). As for Plaintiff's neck, "[d]ays after [the accident] it started to hurt to where I actually noticed it." (*Id*. at 64:17-18).

Plaintiff has been treated for type 1 diabetes since she was eight years old (*Id*. at 24:15). She uses an insulin pump and sees a nephrologist and an endocrinologist regularly (*Id*. at 22:18. 84:16). Her diabetes sometimes causes nausea and headaches due to fluctuating blood sugar levels (*Id*. at 24:5-11). But since the accident, Plaintiff gets headaches two or three times a week that differ from her diabetes headaches (*Id*. at 65:18-66:11, 67:6-15). Her left shoulder pain since the accident is "progressively getting worse." (*Id*. at 63:21). And her neck pain is "getting worse, actually. It's like an everyday thing. It's like all day every day instead of here and there." (*Id*. at 65:6-8).

Plaintiff treated with chiropractor Joshua Bly, D.C. for her neck pain soon after the accident (*Id*. at 71:19-25). At first, Plaintiff saw Dr. Bly three times a week for neck pain, "then once a week, then once every other week and now it's as needed." (*Id*. at 72:24-73:2). Chiropractic therapy (adjustments and massages) eases her pain temporarily (*Id*. at 73:8-13, 16-17). Plaintiff testified at deposition she had not been to the chiropractor in "maybe two months." (*Id*. at 75:13-15). Her pain management doctor administers periodic trigger point injections that relieve her neck and shoulder pain for a few weeks at a time (*Id*. at 76:9-16).

Plaintiff also does neck and shoulder exercises on her own at home two or three times a week (*Id.* at 87:11-22).

Plaintiff testified she has never been treated for anxiety but has felt anxious about her diabetes since she was a teenager and feels anxious to drive sometimes since the accident (*Id.* at 77:16-25, 78:6-9, 79:5-8). The accident did not cause back pain (*Id.* at 77:5-7). Although Plaintiff alleges she has high blood pressure since the accident, she has taken medication for high blood pressure for years (*Id.* at 69:17-18, 70:10-15).

Plaintiff took six days off from her part-time waitressing job at Tiffany's Family Restaurant after the accident to recover (Docs. 57-6 at 4, 58-8). She returned to work at Tiffany's but does not "really carry heavy trays now. Like I'll carry a plate out, you know, two or three at a time instead of stacking them on the tray and carrying them. Or the other girls will help me carry my trays out." (Doc. 57-16 at 92:15-18). Also "[s]weeping kind of aggravates it, when I'm sweeping at the end of the night." (*Id.* at 92:20-21). Plaintiff cannot pull laundry out of the washer or dye or curl her hair without pain (*Id.* at 89:7-19). She no longer paddleboards and rarely goes fishing, two pre-accident hobbies (*Id.* at 90:14-21). Since the accident she is scared to drive and has trouble sleeping due to pain (*Id.* at 79:5-8, 80:2-8).

## II.  Procedural Background

Plaintiff mailed a demand letter and an SF-95 administrative claim form to DHS one week after the accident (Docs. 57-2, 57-3). The agency characterized these documents as an invalid administrative claim under 28 U.S.C. § 2675(b), because Plaintiff did not demand a sum certain on her SF-95 (Doc. 57-4). So, Plaintiff mailed a second SF-95 to the agency on March 26, 2020, claiming $24,155.63 in total damages (Doc. 45-1 at 2). Plaintiff also included a separate "Time-Limited Demand" letter requesting that the United States "tender the policy

limits of $200,000 within 15 days or this offer will expire on its own." (Doc. 57-6). Plaintiff's demand was seemingly based on the value of Plaintiff's totaled car ($7,550.07), outstanding medical expenses ($6,854.65), lost wages ($770.53), and un-itemized future medical expenses (Docs. 57-6, 57-7, 57-8, 57-9).

On July 10, 2020, before the agency made a final decision on Plaintiff's March 26, 2020 claim, Plaintiff sent a new demand letter (unaccompanied by an SF-95) advising that the previous offer had expired, attaching additional medical bills, and demanding "the policy limits available under your insured policy" within five days (Docs. 57-10, 57-11, 57-12). Instead, the agency denied Plaintiff's claim on November 12, 2021 (Doc. 57-13).

Plaintiff timely filed this case on March 9, 2022 (Doc. 1). In August 2022, the district judge entered a Case Management and Scheduling Order with these deadlines: January 5, 2023 for Plaintiff's expert disclosures; February 6, 2023 for the United States' expert disclosures; discovery deadline of April 10, 2023; dispositive motions due by May 15, 2023; and a three-day bench trial in October 2023 (Doc. 20). After the parties consented to the undersigned's jurisdiction in late January 2023 (*see* Doc. 26), the Court held a status conference (Doc. 31). The parties agreed to keep the pretrial deadlines in the district judge's Case Management and Scheduling Order (Doc. 29). With the parties' agreement, the Court scheduled a three-day bench trial to begin October 16, 2023 (*Id*.).

The discovery phase of the case closed without Plaintiff seeking discovery from the United States or disclosing any expert witnesses.

On April 18, 2023, the same day the parties unsuccessfully mediated, Plaintiff moved to extend her Rule 26(a)(2) expert disclosure deadline (which had passed four months earlier), continue the trial, and set a new case management conference to "reschedule the trial and get

5

new deadlines" (Doc. 42).  In its opposition, the United States[1] correctly characterized Plaintiff's request as a discovery "do over" that would prejudice the United States by forcing it to expend "time, resources, and costs to revisit, revise, and re-engage in a second round of defensive discovery" (Doc. 48).  The United States also asserted that while it had "actively engaged in discovery in this case, inclusive of two expert witness disclosures, within the applicable [case management and scheduling order] deadlines. [Plaintiff] did not." (*Id.*).

At a hearing on May 1, 2023, Plaintiff's counsel acknowledged he had not disclosed any retained experts or their reports under Rule 26(a)(2)(B) ("*Witnesses Who Must Provide a Written Report*") or a summary of any non-retained expert's facts and opinions under Rule 26(a)(2)(C) ("*Witnesses Who Do Not Provide a Written Report*").  While Plaintiff's counsel initially represented that Plaintiff disclosed both her treating physicians and their "reports," he later clarified that Plaintiff only produced her medical records.  Plaintiff's counsel offered that he missed the expert disclosure deadline because he was unfamiliar with federal court and the requirements of Rule 26, he assumed the expert disclosure and discovery deadlines were closer together, he had expected the case would settle at mediation (rendering a retained expert unnecessary), and in his opinion there was ample time for the Court to reopen expert discovery without moving the trial date (*see* Doc. 42).  Ultimately, however, Plaintiff's counsel conceded that he made a strategic decision to go forward without disclosing experts in hopes of settling the case before incurring additional costs.

---

[1] The United States cross-moved the Court to compel Plaintiff to supplement her Rule 26(a)(1) damages computation (Doc. 37), which the Court granted in part and ordered Plaintiff to "produce to Defendant all documents or other evidentiary material on which her damages calculation is based." (Doc. 51 at 2).

In denying Plaintiff's motion to extend the case management deadlines, the Court found Plaintiff failed to demonstrate that, despite due diligence, she could not meet the deadlines and did not demonstrate good cause for the Court to modify the scheduling order (Doc. 51 at 1). To the contrary, the Court found: "There was nothing preventing Plaintiff from meeting the deadline. It was just a strategic decision on your part not to go forward with that disclosure because you wanted to settle without spending the money." The Court declined to allow Plaintiff to disclose new expert opinions after the close of discovery. Simply stated, "[y]ou are stuck with the case where it is" (*See* restricted digital audio file at Doc. 50).

Despite this, the Court gave Plaintiff "a little bit of leeway" regarding expert opinions that had been previously disclosed within the treatment records Plaintiff had produced to the United States during discovery (*Id.*).[2] Specifically, the Court gave Plaintiff one week from the May 1, 2023 hearing to comply with Rule 26(a)(2)(C) and produce a summary of the facts and opinions to which Plaintiff's treating physicians were expected to testify (*Id.*). Plaintiff's counsel implored for more time, stating "[w]hat I would like to do is go back to the treating physicians and see if they can get me a report based on the treatment that's already been done to clarify if they believe this client of mine has a permanent injury or what the future medical bills would be" (*Id.*). The Court, however, clarified that: "I just want to be clear in case there was any confusion. I'm not allowing [Plaintiff's counsel] to go back to his treating physicians and generate new opinions" (*Id.*). On May 5, 2023, in purported compliance with this Court's oral Order, Plaintiff produced a two-page document to the United States titled "Summary of

---

[2] The undersigned explained to Plaintiff's counsel that he had "disclosed only the medical records, and that's deficient, as I've pointed out. He should have also had a summary of [the facts and] opinions, and he did not. But [if the expert opinion] is within the medical records, I'm going to give him a little bit of leeway there." (*Id.*).

7

Mary Kreitner's Medical Records, Permanent Injuries, and Future Medical Care Recommendations" (Doc. 57-14).

Against this procedural backdrop, the United States moves for summary judgment (Doc. 57). In her response (Doc. 58), Plaintiff again asks the Court for permission to "bolster its witness list with one non-treating expert, or to allow at least one treating expert in this case to amend their report to add information about opinions or theories." (*Id.* at 6). And the same day she responded to the summary judgment motion, Plaintiff moved again for the Court to extend the expert disclosure deadline (Doc. 59). Plaintiff asked, "just for an extension of time to modify the Expert Disclosure to add an expert or allow the current treating physicians to add a report that is in addition to their current reports." (*Id.* at 2). The Court denied Plaintiff's motion, explaining it had already "denied Plaintiff's request to modify the scheduling order but permitted her to provide a late disclosure of Plaintiff's treating physicians." (Doc. 62 at 1, fn. 1).

### III.   Summary Judgment Standard

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show there is no genuine disputed issue of material fact, and the movant is entitled to judgment as matter of law. *See* Fed. R. Civ. P. 56(a) and (c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is material if it is a legal element of the claim that may affect the outcome of the suit under the substantive governing law. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). A dispute about a material fact is "genuine" if a reasonable jury could find

for the non-moving party. *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, the court must view the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mtn. Park, Ltd. v. Oliver,* 836 F.2d 1560, 1563 (11th Cir. 1989)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson,* 477 U.S. at 252).

**IV.   Discussion**

The Court derives jurisdiction over Plaintiff's case from the FTCA. *See* 28 U.S.C. § 1346(b) *et seq*. The FTCA includes a limited waiver of the United States' sovereign immunity regarding claims for money damages, injury or loss of property, or personal injury caused by the negligent or wrongful act or omission of any Government employee, if the injury or loss was caused while the employee was acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). When a claimant brings a FTCA claim, the Court applies the law of the state

9

where the alleged act or omission occurred. *Id*. Because Plaintiff's accident occurred in Pinellas County in the Middle District of Florida, Florida law applies.

To establish negligence under Florida law, a plaintiff must prove four elements: (1) duty of care, (2) breach of that duty, (3) causation, and (4) damages. *Clay Elec. Co-op, Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003); *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). Drivers owe a "duty to use reasonable care on roadways to avoid accidents and injury to [themselves] or others." *Williams v. Davis*, 974 So. 2d 1052, 1063 (Fla. 2007). But "[a] finding of breach of a duty of care on the part of a defendant … does not establish a right to recovery by the plaintiff unless the plaintiff can also show causation and damages." *Hendrix v. United States,* No. 8:19-cv-1145-SCB-AAS, 2021 WL 1997426, at *6 (M.D. Fla. May 19, 2021) (citing *Giter v. United States*, 2010 WL 375929, at *6 (M.D. Fla. 2010)).

In negligence actions, Florida courts follow the "more likely than not standard of causation" and require proof that "defendant's negligence 'probably caused' the plaintiff's injury." *Aycock v. R.J Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) (citing *Cox v. St. Joseph's Hosp.*, 71 So. 3d 795, 799 (Fla. 2011) and *Gooding v. Univ. Hosp. Bldg, Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984)). In *Gooding*, the Florida Supreme Court explained the burden of proof:

> On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

445 So. 2d at 1018 (quoting Prosser, Law of Torts § 41 (4th Ed. 1971)).

As the Eleventh Circuit recently affirmed, under Florida law non-readily observable injuries require expert medical evidence to prove causation. *Willis v. Royal Caribbean Cruises, Ltd.*, __ F.4th ___, 2023 WL 5199468, at *5 (11th Cir. Aug. 14, 2023); *see also Ballard v. United States*, No. 3:15-cv-101-J-25MCR, 2017 WL 11630641, at *8 (M.D. Fla. Oct. 5, 2017); *Rementer v. United States*, No. 8:14-cv-642-T-17MAP, 2017 WL 1095054, at *18 (M.D. Fla. Mar. 21, 2017) ("In the negligence context under Florida law, "lay testimony is legally insufficient to support a finding of causation where the medical condition involved is not readily observable."). "Soft-tissue injuries, such as back, head, neck, hip, and shoulder injuries, are not 'readily observable' medical conditions and, therefore, expert testimony as to the cause of such injuries is required." *Mustafa v. United States*, No. 21-20633-Civ, 2022 WL 18023353, at * 11 (S.D. Fla. Sept. 15, 2022). Expert testimony on injuries such as depression and anxiety is also required. *Rivera v. Royal Caribbean Cruises, Ltd.*, 711 F. App'x 952, 955 (11th Cir. 2017).

Plaintiff asserts one count of negligence against the United States for damages Weber caused while operating a DHS-owned vehicle within the scope of his employment with the USCG (Doc. 12). Her Amended Complaint references her injuries in general terms ("Plaintiff, Mary Kreitner, suffered bodily injury and resulting pain and suffering") (*Id*. at ¶ 9), although she later testified at deposition that her lawsuit is based on injuries to her neck and left shoulder as well as high blood pressure, anxiety, and headaches (*see* Doc. 57-16). Her interrogatory responses echo this (Doc. 57-15). According to records attached to Plaintiff's March 26, 2020 administrative claim, her cervical MRI reveals, among other things, disc herniations and protrusions (Doc. 57-6 at 3). Plaintiff also alleges damages to her vehicle, past and future medical bills, lost income, and non-economic injuries (*Id*.). Neither party

11

disputes that Plaintiff's complained-of medical injuries are not readily observable and therefore require proof of causation by expert testimony.

But Plaintiff's evidence (her own testimony and interrogatory responses and the MRI itself) is not medical expert testimony and thus cannot establish proximate cause. Plaintiff herself is not a medical expert. Similarly, her MRI – although performed by a medical doctor who noted she had disc herniations and protrusions – does not touch on anything other than the condition of her neck when the MRI was taken and is not an expert explanation on *causation*. Plaintiff states she has produced her treating physicians' and treating chiropractor's records to the United States. While these treatment records presumably discuss Plaintiff's injuries, diagnoses, and treatment, Plaintiff has not disclosed a treatment record containing an expert causation opinion—let alone a disclosure that complied with Rule 26(a)(2)(A) or (B).

Rule 26(a)(2) provides default rules governing expert witnesses' pretrial disclosures. *Cedant v. United States*, __ F.4th ___, 2023 WL 4986402, at *3 (11th Cir. Aug. 4, 2023). A witness who is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" has significant pretrial disclosure requirements under Rule 26(a)(2)(B). Retained experts must disclose a thorough "written report" with six substantive parts, "unless otherwise stipulated or ordered by the court." Fed. R. Civ. P. 26(a)(2)(B). Written expert reports must be prepared and signed by the expert and must include the "basis and reasons" for "all opinions" offered by the expert, plus the "facts or data considered by the witness." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). For all other expert witnesses (non-retained experts), Rule 26(a)(2)(C) requires a less onerous two-part disclosure, again unless "otherwise stipulated or ordered by the court." Fed.

R. Civ. P. 26(a)(2)(C). These two parts are: (1) the subject matter on which the witness is expected to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence; and (2) a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). *See Cedant*, 2023 WL 4986402, at *3-4.

So, subsections (B) and (C) of Rule 26(a)(2) each contain a caveat that reports and disclosures must include specified components "*unless otherwise stipulated or ordered by the court.*" Fed. R. Civ. P. 26(a)(2)(B)-(C) (emphasis added). This allows the district court (through orders or local rules) or the parties (through written stipulations) to adjust Rule 26's default rules "as the circumstances of a case demand." *See Cedant*, 2023 WL 4986402, at *8. Plaintiff did not meet the January 2023 expert disclosure deadline under either subsection or move for an extension of the deadline until four months later. Interestingly, in that motion, Plaintiff requested an extension to file her experts' written reports under Rule 26(a)(2)(B) as to "non-economic damages, pain and suffering, permanency, or future medical bills" only (Doc. 42 at 2).³ The Court denied Plaintiff's motion because Plaintiff did not demonstrate due diligence in attempting to meet the expert disclosure deadline or good cause for the extension (Doc. 51).

It became obvious during the Court's May 1, 2023 hearing that Plaintiff's counsel assumed he had complied with Rule 26(a)(2) regarding Plaintiff's treating physicians, because he had produced Plaintiff's treatment records (*see also* Doc. 42, "In our case the providers disclosed by the Plaintiff are treating physicians whose *reports* the Defendant already has") (emphasis added). This is clearly deficient under both subsection (B) and (C) of Rule 26(a)(2).

---

³ Confusing things further, Plaintiff's motion erroneously cited Rule 26(a)(2)(C) and asked the Court for additional time to disclose "two Medical Experts who haven't treated the Plaintiff and whose reports will be immediately forthcoming when available." (Doc. 42 at 2).

13

*See Rodriguez v. Walmart Stores East, L.P.*, No. 2:20-cv-474-SPC-NPM, 2021 WL 4750087, at *4 (M.D. Fla. Oct. 12, 2021) ("Simply dumping records on an opposing party does not satisfy the clear, simple requirements of Rule 26(a)(2)(C)."). But the Court altered the default rules and permitted Plaintiff to submit late disclosures of her non-retained treating physicians, provided these late disclosures did not contain new opinions not previously disclosed in the treatment records provided to the United States during the discovery period.[4]

Plaintiff's late disclosure, however, still did not comply with Rule 26(a)(2)(C). On May 5, 2023, Plaintiff produced a confusing two-page document to the United States titled "Summary of Mary Kreitner's Medical Records, Permanent Injuries, and Future Medical Care Recommendations" with these headings: "MRI of Cervical Spine;" "Permanent Injuries Identified in MRI of Cervical;" "Hybrid Expert (Treating Physician and Medical Expert);" "Medical Expert (Nontreating Physician);" "Future Medical Treatment Required;" "Outstanding Medical Bills;" "Outstanding Liens;" and "Loss of Income." (Doc. 58-14). Plaintiff's disclosure lists four "hybrid experts," two "medical experts," and the general topics of their testimony (*Id.*). For example, under the "hybrid expert" heading, Plaintiff lists "Dr. Joshua Bly, D.C.: Biomechanical joint dysfunction." (*Id.*).

---

[4] At the May 1, 2023 hearing, the Court stated that the issue as to whether Plaintiff's treating physicians could offer causation opinions was something the Court would need to address at a later point. The Court observed that treating physicians generally do not form causation opinions within the scope of their treatment but that "there are exceptions to every rule." (Doc. 50). In *Cedant*, the Eleventh Circuit recently rejected the notion that causation witnesses must always file expert reports under Rule 26(a)(2)(B), and the Court instead endorsed the "'why-they-were-hired' distinction between retained and non-retained experts." 2023 WL 4986402 at *7. In other words, "neither category of expert witnesses defined in Rule 26(a)(2) – retained or non-retained – has to do with the subject of the expert testimony. Instead, the categories depend on when and why an expert witness was hired." *Id*. And "[t]reating physicians, the type of expert witnesses involved here, are first hired by their patients to treat rather than to testify." *Id*.

14

To the extent Plaintiff – through her May 5, 2023 disclosure – attempts to sneak in retained experts under Rule 26(a)(2)(B), she is too late. The Court has denied Plaintiff's requests to extend the expert disclosure deadline twice already (Docs. 51, 62). Even if the Court deemed the May 5, 2023 disclosure to be timely (it does not), it is not accompanied by any retained experts' written reports as required by Rule 26(a)(2)(B).

But neither does Plaintiff's May 5, 2023 disclosure satisfy Rule 26(a)(2)(C)'s less onerous requirements for non-retained witnesses. Her list of "hybrid experts" (*i.e.*, her treating physicians) includes Dr. Bly, Juyia Rushad, D.O., Mary Wright, A.P.R.N., and Mary Cunningham. Plaintiff offers this summary of the subject matter of their testimony under Rule 26(a)(2)(C)(i): "Biomechanical joint dysfunction" for Dr. Bly and "permanent injury to C6-7 (disc protrusion); permanent injury to C4-5 (disc herniation); permanent injury to C3-4 (disc herniation); traumatic spondylopathy" for Dr. Rushad, Ms. Wright, and Ms. Cunningham.[5] But Plaintiff does not offer "a summary of facts and opinions" to which Plaintiff's treating physicians are expected to testify, and it is not enough to rely on Plaintiff's medical records. Fed. R. Civ. P. 26(a)(2)(C)(ii). Although Plaintiff lists the topic of each treating physician's testimony, she provides no insight into the opinions the physicians would offer or on what facts these opinions would be based.

Setting aside whether Plaintiff's bare bones offering contains sufficient "facts and opinions" to clear the bar set by Rule 26(a)(2)(C)(ii), it does not speak to *causation*. At bottom, Plaintiff has never disclosed an expert opinion on causation. Consequently, Plaintiff failed to

---

[5] Ms. Wright will also testify to cervicalgia, and Ms. Cunningham will also testify to "concussion, traumatic hernation [sic] of the cerical [sic] intervertebral disc (a permanent injury)." (Doc. 57-14).

present evidence to create a genuine issue of material fact as to medical causation because she had no medical expert opinion regarding the proximate cause of her non-observable injuries. And without evidence of causation, she cannot prove negligence.[6] The Court grants the United States' summary judgment motion. *See Rodriguez*, 2021 WL 4750087, at * 8 (granting summary judgment to defendant because plaintiff offered no expert causation testimony).

## V.   Conclusion

The Court ORDERS:

(1) Defendant's summary judgment motion (Doc. 57) is GRANTED.

(2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

ORDERED in Tampa, Florida on September 1, 2023.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

---

[6] In light of Plaintiff's failure to satisfy the causation requirement, the Court does not analyze the United States' alternative arguments for partial summary judgment (lack of proof of permanent injury to recover non-economic damages and damages capped at the amount listed in Plaintiff's March 26, 2020 SF-95).